EVA HAMILTON, on Behalf of Ricky Ceasar, a Minor, Petitioner-Appellee, v. RICKY CEASAR, Respondent-Appellant.

First District (2nd Division)   No. 1—90—2308

Opinion filed August 6, 1991.

Randolph N. Stone, Public Defender, of Chicago (Stephen L. Richards, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Obyrietta Gammett Scott and Leonard N. Foster, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Respondent Ricky Ceasar's (Ceasar's) jury demand in the underlying paternity suit was stricken because he failed to pay the statutory jury fee. Leave to appeal from this interlocutory order was granted pursuant to Supreme Court Rule 308. (134 Ill. 2d R. 308.) The issue certified by the circuit court is:

> "Whether a respondent in a parentage action, under the Illinois Parentage Act of 1984, as amended, who had been determined by the branch court judge to be indigent, within the meaning of the Act, and hence, appointment of the Public Defender to represent him because of his indigency [sic], may constitutionally be deprived of the statutorily created right to trial by jury, solely because he did not pay the necessary fee to obtain a jury trial."

We hold that the jury fee requirement does not impinge upon any constitutional rights possessed by Ceasar and affirm.

Petitioner, Eva Hamilton, initiated this paternity suit under the Parentage Act of 1984 (Ill. Rev. Stat. 1987, ch. 40, par. 2501 *et seq.*) (Act) on January 1, 1988. The circuit court found Ceasar to be indigent, and the public defender was appointed as his attorney. Blood group tests were also performed upon the parties at no cost to Ceasar.

On the day set for trial, the circuit judge *sua sponte* struck Ceasar's jury demand because the jury fee had not been paid. His motion to vacate that order was denied. The circuit judge, however, certified the aforementioned issue in compliance with Rule 308 (134 Ill. 2d R. 308), and this court granted the application for leave to appeal.

The issue presented in this appeal is similar to that decided by the Fourth District Appellate Court in *People ex rel. Lockwood v. McDaniel* (1989), 180 Ill. App. 3d 13, 536 N.E.2d 80 (*McDaniel*). In that paternity action it was held that the circuit court properly struck an indigent defendant's jury request for failure to pay the jury fee. (*McDaniel*, 180 Ill. App. 3d at 17.) The circuit court in this case based its ruling upon *McDaniel*. On appeal, Ceasar claims that he was denied his rights to a jury trial, due process, and equal protection.

■ The Illinois Constitution of 1970 provides that "[t]he right of trial by jury as heretofore enjoyed shall remain inviolate." (Ill. Const. 1970, art. I, §13.) This does not require a trial to be held before a jury in every case; nor are all restrictions on the exercise of that right precluded. (*Hudson v. Leverenz* (1956), 10 Ill. 2d 87, 91, 139 N.E.2d 255.) Determination of paternity was not recognized at common law; therefore, no constitutional right to trial by jury inheres in such an action. (See *City of Monmouth v. Pollution Control Board* (1974), 57 Ill. 2d 482, 485, 313 N.E.2d 161; *Ehorn v. Podraza* (1977), 51 Ill. App. 3d 816, 817, 367 N.E.2d 300.) Further, the sixth amendment of the United States Constitution does not require a jury trial absent potential imprisonment, as here. *Frank v. United States* (1969), 395 U.S. 147, 151, 23 L. Ed. 2d 162, 167, 89 S. Ct. 1503, 1506.

■ In Illinois, a fee must be paid to the clerk of the circuit court by the party demanding a jury trial "for the services of a jury in every civil action not quasi-criminal in its nature." (Ill. Rev. Stat. 1987, ch. 25, par. 27.2(14)(b).) A paternity proceeding, although criminal in form, is a civil proceeding to determine the identity of the putative father and not to impose a penalty (*People ex rel. Cizek v. Azzarello* (1980), 81 Ill. App. 3d 1102, 1105, 401 N.E.2d 1177) (*Azzarello*), and is governed by the Code of Civil Procedure (Ill. Rev.

Stat. 1987, ch. 110, par. 1–101 *et seq.*), unless otherwise required. Ill. Rev. Stat. 1987, ch. 40, par. 2513; *People ex rel. Mathis v. Brown* (1976), 44 Ill. App. 3d 783, 786, 358 N.E.2d 1160.

Relying upon *Little v. Streater* (1981), 452 U.S. 1, 68 L. Ed. 2d 627, 101 S. Ct. 2202 (*Streater*), a case not considered in *McDaniel*, Ceasar argues that the denial of a jury trial based on failure to pay the jury fee violates his right to due process under both the United States and Illinois Constitutions. In *Streater*, the indigent appellant was the subject of a paternity suit in Connecticut and moved the trial court to order blood group tests of the appellee-mother and her child. The court ordered the tests, but denied the request that they be furnished at the State's expense, with the result that no tests were performed. After trial, that appellant was determined to be the child's father, and he was ordered to pay child support directly to the State. (*Streater*, 452 U.S. at 3-4, 68 L. Ed. 2d at 631, 101 S. Ct. at 2204.) The Supreme Court characterized paternity proceedings brought under the Connecticut statutes as having "quasi-criminal" overtones. Further, an indigent defendant was at a distinct disadvantage due to the burden placed upon him by Connecticut law; the mother was enabled to establish a *prima facie* case by the constancy of her accusation, and the putative father then had the burden of coming forward with evidence other than his own testimony. Some of the most probative evidence that a defendant might offer to prove his innocence are results of blood group tests. It was a denial of due process, therefore, to require an indigent defendant to pay for the evidentiary blood group tests. *Streater*, 452 U.S. at 9-12, 68 L. Ed. 2d at 634-36, 101 S. Ct. at 2207-09.

■ The Illinois Act significantly differs from the Connecticut statutory scheme presented in *Streater*, in that an Illinois defendant need not appear at court proceedings or face arrest, post bond or face incarceration, or plead "guilty" or "not guilty" to the charge. One commentator indeed noted that "[t]he 1984 [Illinois] act significantly changes the old, rigid, quasi-criminal rights and procedures." (Klages, *The Illinois Parentage Act of 1984: The Continuing Shift Toward Civil Enforcement*, 73 Ill. B.J. 564 (1985).) Further, Illinois law imposes upon a defendant no unusual evidentiary obstacles; it is the mother's burden to establish paternity by a preponderance of the evidence. (*Azzarello*, 81 Ill. App. 3d at 1108.) *Streater*, therefore, lends little support to the case *sub judice*.

■ Jury fee statutes have been upheld against constitutional challenges in other circumstances. In quoting the supreme court of Minnesota, our supreme court said:

" 'We can see no valid objection to a reasonable fee of this kind. The constitution does not guarantee to the citizen the right to litigate without expense, but simply protects him from the imposition of such terms as unreasonably and injuriously interfere with his right to a remedy in the law or impede the due administration of justice ***.' " (*Williams v. Gottschalk* (1907), 231 Ill. 175, 179, 83 N.E. 141, quoting *Adams v. Corriston* (1862), 7 Minn. 456, 461.)

In *Morrison Hotel & Restaurant Co. v. Kirsner* (1910), 245 Ill. 431, 433, 92 N.E. 285, the supreme court held that the jury fee requirement did not impinge upon the right to a jury trial, observing:

"It is not a right to command the services of a jury without cost but is of the same nature as the right to have official services performed by public officers, and a requirement for the payment of a reasonable amount for jury fees, such as will necessarily be required in every jury trial, is not a denial or encroachment upon the right."

See also *Fried v. Danaher* (1970), 46 Ill. 2d 475, 478-80, 263 N.E.2d 820; *People ex rel. Flanagan v. McDonough* (1962), 24 Ill. 2d 178, 180, 180 N.E.2d 486; *Stephens v. Kasten* (1943), 383 Ill. 127, 132-33, 48 N.E.2d 508; Annot., 68 A.L.R.4th 343 (1989).

■ Ceasar's equal protection claim also fails. The purpose of the jury fee is to offset some of the costs of a jury trial, and it is required of every civil litigant who requests such a trial. A free jury trial in the context of paternity proceedings neither implicates a fundamental right, nor involves a statutory classification based on race, alienage, or national origin. (See *United States v. Kras* (1973), 409 U.S. 434, 446, 34 L. Ed. 2d 626, 636, 93 S. Ct. 631, 638.) Instead, a paternity suit is essentially an action to recover money damages for the support of the child. (*Ehorn*, 51 Ill. App. 3d at 817.) The statute, then, only must be rationally justified as serving a legitimate State interest. (*Kras*, 409 U.S. at 446, 34 L. Ed. 2d at 636, 93 S. Ct. at 638.) Unlike the litigants in *Boddie v. Connecticut* (1971), 401 U.S. 371, 380-82, 28 L. Ed. 2d 113, 120-21, 91 S. Ct. 780, 787-88, Ceasar here was not denied access to the courts by the imposition of fees; he was denied only a jury, and "[a] court is fully organized and competent for the transaction of business without the presence of a jury." *Hunt v. Rosenbaum Grain Corp.* (1934), 355 Ill. 504, 511, 189 N.E. 907.

Other jurisdictions faced with this issue have held that the denial of a jury trial in a paternity suit based upon an indigent's inability to pay the jury fee is not unconstitutional. (See *Robertson v. Apuzzo* (1976), 170 Conn. 367, 365 A.2d 824, *cert. denied* (1976), 429 U.S.

852, 50 L. Ed. 2d 126, 97 S. Ct. 142; *People v. Marshall* (1978), 82 Mich. App. 92, 266 N.W.2d 678; see also *In re GP* (Wyo. 1984), 679 P.2d 976, 986-88 (denial of jury trial for failure to pay jury fee in parental-termination proceeding did not violate due process).) Both *Robertson* and *Marshall* were relied upon by the Fourth District Appellate Court in *McDaniel.*

Ceasar nonetheless argues that the circuit court could have waived his fees pursuant to section 5—105 of the Code of Civil Procedure, which provides a poor person with "all the necessary processes, appearances and proceedings, as in other civil cases, without fees or charges." (Ill. Rev. Stat. 1987, ch. 110, par. 5—105.) This provision does not state that no expenses shall be borne by the indigent party, but is intended simply to provide equal access to the courts, which Ceasar commands here. *People v. Nicholls* (1978), 71 Ill. 2d 166, 176, 374 N.E.2d 194; *McDaniel*, 180 Ill. App. 3d at 16.

The circuit court did not err in striking indigent Ceasar's jury demand for lack of payment of the jury fee in the underlying paternity action. Accordingly, we affirm.

Affirmed.

SCARIANO, P.J., and DiVITO, J., concur.